UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                          **DECISION AND ORDER**

v.

                                          11-cr-00384-WMS-JJM

MARC IRWIN KORN,
                       Defendant.
_____

        Defendant is charged in Superseding Indictment [30][1] with, *inter alia*, failure to pay over trust fund/payroll taxes for Fairchild Manor Nursing Home, LLC and Batavia Nursing Home, LLC, in violation of 26 U.S.C. §7202. Id., Counts 6-9. This matter has been referred to me by Hon. William M. Skretny for all pretrial proceedings [19].

        Although defendant's pretrial motion seeks to suppress a variety of evidence and statements (defendant's Memorandum of Law [41-17], pp. 6-23), thus far I have concluded that defendant has only established his entitlement to an evidentiary hearing concerning the voluntariness of defendant's June 8, 2010 statements and the government's alleged breach of the no-contact rule in conducting that interview, without prejudice to possible expansion of the hearing. Transcript of the January 15, 2013 proceeding [59], pp. 35-36.

        A hearing concerning these issues was conducted on February 27, 2013 [67]. Following the testimony of the government's witnesses (IRS Criminal Investigation Special Agent Michael Klimczak and FBI Special Agent Allan Rains), defendant's attorney stated that defendant would be the only possible defense witness, but requested that, before he made a final decision, I should determine whether IRS Revenue Officer Gil Reyes should testify concerning the alleged no-contact rule violation. February 27, 2013 hearing transcript [67], pp. 190-93. I

---

[1]     Bracketed references are to the CM/ECF docket entries.

directed the parties to file briefs addressing whether additional witnesses should testify based on the current scope of the hearing, and whether and to what degree (if any) the scope of the evidentiary hearing should be expanded based on the hearing testimony thus far. March 1, 2013 Text Order [66].

During oral argument of these issues on May 14, 2013, I stated that I would consider the hearing closed on the alleged no-contact rule violation, without prejudice to the possibility of reopening the hearing should it be established in the post-hearing submissions that further evidence is necessary. This left the only open issue being whether defendant would testify concerning the voluntariness of his June 8, 2010 statements. Defendant's attorney asked that I address whether the hearing should expanded to address that aspect of his motion to suppress Revenue Officer Reyes' February 3, 2010 interview of defendant, before deciding whether defendant would testify.[2]

For the following reasons, I conclude that at this time there is no basis to expand the evidentiary hearing to address this aspect of defendant's pretrial motion seeking to suppress.

**ANALYSIS**

In December 2009 Revenue Officer Reyes took over the IRS Collection Division's investigation of Batavia Nursing Home, LLC's and Fairchild Manor Nursing Home's failure to pay employment taxes. Defendant's Reply Memorandum of Law [57], pp. 9-10. On

---

[2] At oral argument defendant's attorney specifically stated that "part of the decision of whether Mr. Korn will testify relates to whether Officer Reyes is going to testify and what he says. That goes back to . . . an open part of his motion. Whether the IRS interviews of Mr. Korn after Officer Reyes learns of the criminal investigation, triggered an obligation to give Mr. Korn warnings in February 2010." Unofficial chamber's transcription of the May 14, 2013 oral argument.

December 29, 2009, SA Klimczak advised Revenue Officer Reyes that the "IRS-CI had an open primary investigation on KORN in conjunction with a joint investigation with the USAO and FBI. Their investigation was initiated on something other than unpaid employment taxes", and asked Revenue Officer Reyes to let him know when his case was closed so that Agent Klimczak could obtain the file. [50-1], ¶¶3-4.

On February 3, 2010 Revenue Officer Reyes conducted an interview of defendant and during this interview did not inform defendant of his Miranda rights or the on-going criminal investigation. Defendant's Reply Memorandum of Law [57], p. 10. There is no allegation by defendant that this was a custodial interrogation. Aspects of this interview were memorialized on IRS Form 4180, "Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes". DeVita Affirmation [41], Ex. C.

Defendant seeks to expand the hearing in order to "question Officer Reyes about his awareness that 26 U.S.C. §7202 and 26 U.S.C. §6672 have the same elements and that the information he elicited during the 4180 interview could be used in a prosecution under 26 U.S.C. 7202". Defendant's post-hearing letter brief [70], p. 11. He argues that Revenue Officer Reyes' February 3, 2010 interview was a *de facto* criminal investigation since the elements of 26 U.S.C. §6672, the statute under which Revenue Officer Reyes was investigating defendant, "are virtually identical" to 26 U.S.C. §7202, the criminal statute under which defendant was ultimately charged. Defendant's Reply Memorandum of Law [57], p. 9; Superseding Indictment

[30], Counts 6-9.³ As a *de facto* criminal investigation, defendant argues that Revenue Officer Reyes was required to provide defendant with the warnings mandated by the Internal Revenue Manual ("IRM"), which governs the procedures to be employed in IRS criminal investigations. The relevant provision of the IRM states:

> "**9.4.5.11.3.1 Informing of Constitutional Rights in Non-Custodial Interviews (05-15-2008)**
>
> (1) The special agent will advise the individual of his/her constitutional rights during non-custodial interviews when the individual is a subject of an investigation, a corporate officer or employee who appears to be implicated in an alleged wrongdoing involving a corporation under investigation, or when a witness' statement would incriminate the witness.
>
> * * *
>
> (3) To defend against an attack on the admissibility of any statement or documentary evidence furnished by a subject under investigation, the special agent will always inform the subject of his/her constitutional rights at the beginning of a formal question and answer interview, even if the subject had previously been advised.
>
> (4) Failure to give subjects the constitutional warnings prescribed by Internal Revenue Service procedures has resulted in the exclusion of evidence obtained from the subjects. See *US v. Leahey and US v. Heffner*." Defendant's Memorandum of Law [41-17], p. 14 (*quoting* IRM 9.4.5.11.3.1, http://www.irs.gov/irm/ (last visited Oct. 2, 2012)).

The exclusionary rule does not apply when IRS agents violate internal regulations, unless compliance with those regulations are mandated by the Constitution or statute. *See* United

---

³ In addition to the February 3 and June 8, 2010 interviews, defendant was interviewed on October 13 and November 9, 2009. Defendant's post-hearing letter brief [70], p. 10 n.8. Defendant argues that the hearing "should be expanded to include whether the IRS violated its procedures in failing to advise Mr. Korn of his right to counsel *during the interviews in June 2010 and beforehand*." Id., p. 10 (emphasis added). However, he does not seek a ruling on these other interviews before deciding whether he will testify.

States v. Caceres, 440 U.S. 741 (1979); United States v. Boykoff, 186 F.Supp.2d 347, 350 (S.D.N.Y. 2002), aff'd, 67 Fed.Appx. 15 (2d Cir. 2003) (Summary Order) ("It has been the law for over two decades that violation of agency rules in the conduct of an investigation does not warrant suppression of evidence obtained during that investigation" *citing* Caceres).[4] However, the procedure outlined in the IRM, which requires Miranda-type warnings even in non-custodial settings, goes beyond what is required by law. "Neither the constitution nor federal law require the issuance of *Miranda* warnings in a non-custodial setting . . . . There is no doubt that the purpose of the IRS regulations was to extend the protections of *Miranda* to non-custodial inquiries into criminal tax violations . . . . It is equally clear, however, that the IRS was not compelled by any federal authority to enact such regulations." United States v. Mauser, 723 F.Supp. 995, 1002 (S.D.N.Y. 1989). *See* Irvine, 699 F.2d at 46 (same).

        Caceres created a narrow exception, leaving "the door slightly ajar by indicating that it might be a denial of due process to induce reasonable reliance on the regulation and then pull the rug out from under the defendant." United States v. Kontny, 238 F.3d 815, 819 (7th Cir.), cert. denied, 532 U.S. 1022 (2001). However, here, "[t]here has been no suggestion that

---

    [4]    While this section of the IRM cites to United States v. Leahey, 434 F.2d 7, 8 (1st Cir.1970) and United States v. Heffner, 420 F.2d 809 (4th Cir. 1970), these cases were decided *prior* to Caceres, making their continued validity suspect. *See* United States v. Irvine, 699 F.2d 43, 46 (1st Cir. 1983)("In light of *Caceres*, the approach taken by this court in *Leahey* and its successors is no longer good law"); Riland v. Commissioner of Internal Revenue, 79 T.C. 185, 208 n. 9 (Tax Court 1982) (Leahey and Heffner were "decided prior to *Caceres*. While they have not been specifically overruled, there exists grave doubt as to their continuing validity").

the defendant was aware of the IRS regulations, much less relied on them to his detriment." Mauser, 723 F.Supp. at 1002.[5]

Defendant also argues that "IRS civil revenue agent and officers cannot act as a 'cat's paw' for a criminal investigation by misleading the taxpayer into believing only civil consequences are at issue." Defendant's Memorandum of Law [41-17], p. 17. The government concedes that "[i]t is clear that the IRS may not develop a criminal investigation under the auspices of a civil audit." Government's Response [49], p. 16 (*citing* United States v. Grunewald, 987 F.2d 531 (8th Cir. 1993)). However, "[e]vidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes that: 1) the IRS had firm indications of fraud by the defendant, 2) *there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant*, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights." Grunewald, 987 F.2d at 534 (emphasis added).[6]

"To prevail on a claim of trickery and deception, [the defendant] must produce clear and convincing evidence that the [agency's] agents affirmatively misled them as to the true nature of their investigation . . . . It must also be shown that the misrepresentations materially

---

[5]  While defendant relies on United States v. Toussaint, 456 F.Supp. 1069 (D.C.Tex. 1978), which suppressed evidence arising from the IRS's failure to follow its own regulations, the viability of that holding is questionable based on the Supreme Court's subsequent decision in Caceres. *See* United States v. Kim, 2010 WL 3490228, 4 n. 5 (N.D.Cal. 2010) ("Since *Toussaint*, however, the Supreme Court has held that, absent any statutory or Constitutional violation, the exclusionary rule is inapplicable where evidence is obtained solely in violation of an IRS regulation").

[6]  *Compare with* United States v. Scrushy, 366 F.Supp.2d 1134, 1137, 1140 (D. Ala. 2005) (suppressing a deposition given by the defendant in a SEC civil investigation because the government "departed from the proper administration of criminal justice in procuring the Defendant's deposition testimony", where it "manipulated the simultaneous investigations for its own purposes, including the transfer of Mr. Scrushy's deposition into this district for venue purposes").

induced the defendants to make incriminating statements . . . . Inculpatory statements are not involuntary when they result from a desire to cooperate, or from a defendant's ignorance of, or inattention to, his right to remain silent . . . . Further, the [agency's] agents' failure fully to explain the purpose of the interviews does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead." United States v. Mitchell, 966 F.2d 92, 100 (2d Cir. 1992) (addressing the conduct of EPA agents).

As argued by the government - and undisputed by defendant - it is defendant's burden to establish a claim of fraud, deceit or trickery. Government Response [49], pp. 17-18. See United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977) ("The burden for determining whether or not the government has resorted to a deception is on the moving party"); United States v. Okwumabua, 828 F.2d 950, 953 (2d Cir. 1987), cert. denied, 484 U.S. 1063 (1988) ("a defendant must produce clear and convincing evidence that the agents affirmatively misled him as to the true nature of the investigation"). In support of his motion to suppress, defendant submitted an affirmation stating, in relevant part, that:

> "In early February 2010, I received a visit from a third IRS Revenue Officer named Gil Reyes. Officer Reyes informed me that he had taken over the investigations relating to both Batavia and Fairchild. As with the two prior Revenue Officers, Officer Reyes did not advise me of my right to decline to answer his questions, to consult an attorney and have the attorney present for the interview, and did not advise me that the information I provided him could be used against me in a criminal prosecution. Once again, I believed I was required to answer the questions and I cooperated fully with Officer Reyes. He asked me numerous questions regarding the business and financial affairs of Batavia, and wrote down many of my answers on a form that he had with him. At the end of the interview Officer Reyes asked me to sign the form, which I did. I noticed that the form was not fully completed when I signed it.

> Officer Reyes subsequently mailed me a copy of the form that I had signed, and when I received it in the mail I saw that it was now complete." Korn Affirmation [41-16], ¶4.

In initially opposing defendant's motion and his entitlement to an evidentiary hearing, the government argued that defendant "has failed to support his unfounded claim of 'affirmative deception' employed by any IRS employee." Government's Response [49], p. 18. I agree. Defendant's Affirmation does not specify any affirmative misrepresentations by Revenue Officer Reyes at the February 3, 2012 interview or that defendant inquired about the scope of this investigation.

While Revenue Officer Reyes did not inform defendant of the pending criminal investigation, a "'[s]imple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead.' . . . Silence by a government agent can only be equated with an affirmative misrepresentation where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." Okwumabua, 828 F.2d at 953 (*quoting* United States v. Serlin, 707 F.2d 953, 956 (7th Cir.1983)). *See also* Grunewald, 987 F.2d at 534 ("the mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS"); United States v. Prudden, 424 F.2d 1021, 1033 (5th Cir.), cert. denied, 400 U.S. 831 (1970) ("the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that

the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery").[7]

Defendant's reliance on Tweel does not compel a different result. Defendant's Memorandum of Law [41-17], pp. 18-20. In Tweel, the defendant's accountant asked the IRS agent whether a "special agent" was involved in the investigation. The IRS agent "obviously knew the accountant inquired whether a special agent was involved to determine whether he was conducting a criminal audit", yet he answered negatively even though it was indeed a criminal audit being conducted at the request of the Organized Crime and Racketeering Section of the Department of Justice. 550 F.2d at 298. Under these circumstances, the court concluded that the agent's "response, although on the face of it true, misled appellant to such a degree that his consent to the 'search' must be vitiated by the agent's silence concerning the origin of this investigation." Id. at 299.

Defendant argues that "once the criminal investigation had been commenced, the IRS revenue officers had a legal and moral duty to inform Mr. Korn." Defendant's Memorandum of Law [41-17], p. 18. He argues that the legal duty arises from the Fifth Amendment as well as from his Fourth Amendment rights, which were implicated as a result of the documents he produced to Revenue Officer Reyes during the interview. Id., pp. 18-19. According to defendant, "[t]he moral duty arises from the nature of the alleged crime, under

---

[7] *Compare with* United States v. McKee, 192 F.3d 535, 542 n. 5 (6th Cir. 1999) ("If the revenue agent continues the civil audit even after she has developed 'firm indications of fraud,' then she is, in fact, making affirmative misrepresentations to the constitutional detriment of the taxpayer because she is gathering criminal evidence against the taxpayer under the guise of a civil proceeding").

Section 7202, where the line between civil liability and criminal liability is so difficult to discern." Id., p. 18.

However, I have difficulty seeing how there was a legal or moral duty to advise him of the criminal investigation, since, as discussed above, "the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery". Prudden, 424 F.2d at 1033. Therefore, I continue to believe that defendant has failed to establish his entitlement to an evidentiary hearing on this aspect of his motion.

## CONCLUSION

For the following reasons, I conclude that, at this time, there is no basis to expand the evidentiary hearing to address that aspect of defendant's pretrial motion seeking to suppress Revenue Officer Reyes' February 3, 2010 interview of defendant. This determination - like my ruling on the no-contact rule - is without prejudice to the possibility of reopening the hearing should the post-hearing submissions establish that it is warranted. In deciding whether he will testify at this time, defendant should understand that it is without prejudice to his right to testify or present other witnesses should the current hearing be reopened or expanded.

By June 27, 2013, defendant shall advise in writing if he intends to testify or present other witnesses based on the current scope of the proceedings, failing which I will consider the hearing closed and set a briefing schedule for the parties post-hearing submissions,

which may address all of the suppression issues raised in defendant's pretrial motion [47], including whether reopening or expansion of the hearing is warranted.

**SO ORDERED**.

Dated: June 13, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge